UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| SYNKLOUD TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NUANCE COMMUNICATIONS, INC.,<br><br>Defendant. | Civil Action No. 1:20-cv-10564<br>JURY TRIAL DEMANDED |

**PLAINTIFF SYNKLOUD TECHNOLOGIES, LLC'S**
**<u>MOTION FOR RULE 11 SANCTIONS</u>**

Plaintiff SynKloud Technologies, LLC ("Plaintiff" or "SynKloud") submits this Motion for Rule 11 Sanctions against Defendant Nuance Communications, Inc. ("Defendant" or "Nuance"). Synkloud has repeatedly conferred with Nuance regarding its failure to produce any supporting evidence underlying its inequitable conduct counterclaim, yet Nuance continues to assert its counterclaim absent legal and factual support. Nuance's continued assertion of its inequitable conduct counterclaim has forced SynKloud to incur unnecessary costs and has resulted in a waste of the Parties' and this Court's time.

**BACKGROUND FACTS**

SynKloud is the assignee of U.S. Patent No. RE44,248 (" '248 Patent" or "Asserted Patent") entitled "System for Transferring Personalize Matter from One Computer to Another," to Darrell Poirier, issued on May 28, 2013 from the United States Patent and Trademark Office. ECF No. 90, at ¶ 2. On March 20, 2020, SynKloud filed its Complaint asserting direct and indirect infringement of the claims of the Asserted Patent by Nuance. ECF No. 90, ¶ 5. In its Answer and Counterclaims, Nuance asserted a counterclaim of inequitable conduct. *Id*. at ¶ 6.

**SynKloud's Motion for Rule 11 Sanctions- 1**

In its allegations supporting its counterclaim for inequitable conduct, Nuance alleged that Mr. Poirier failed to disclose the FAQ 10 from Dragon's website ("FAQ 10") to the USPTO during the prosecution of the Asserted Patent. *Id*. at ¶ 7. Nuance further alleged that Mr. Poirier had seen the FAQ 10 prior to September 1999 (the priority date of the Asserted Patent). *Id*. at ¶ 8. Discovery, however, has demonstrated this allegation by Nuance to be spurious. Namely, Mr. Poirier indicated that he had not seen the FAQ 10 during the prosecution of the Asserted Patent and first became aware of the FAQ 10 after reviewing Nuance's Answer and Counterclaims. *Id*. at ¶ 10 (Q. Did you see the frequently asked questions for Dragon Dictate that Nuance submitted to SynKloud?...A. Well, it was something I hadn't seen before back in that time frame, certainly."); Poirier Declaration ("Poirier Decl.") filed as Exhibit 3 to SynKloud's Partial Motion for Summary Judgment and incorporated by reference at ¶ 10 ("The first time I became aware of the DD 2.0 Manual and the FAQ 10 was during my review of Nuance's Answer and Counterclaims which included both the DD 2.0 Manual and the FAQ 10 as exhibits.")

Nuance also falsely alleged that Mr. Poirier failed to disclose the Dragon Dictate 2.0 Manual ("DD 2.0 Manual") to the USPTO during the prosecution of the Asserted Patent. *Id*. at ¶ 11. Nuance further falsely alleged that General Voice (Mr. Poirier's employer at the time of the prosecution of the Asserted Patent) was in possession of the DD 2.0 Manual because it was a reseller of Dragon Products. *Id*. at ¶ 12. Discovery, however, has established that which Nuance should have known from its own records prior to filing its counterclaim, i.e., that General Voice only sold Dragon Naturally Speaking products, a different product line to Dragon Dictate. *Id*. at ¶ 13. Dragon Dictate 2.0 was a discreet speech recognition program, while Dragon Naturally Speaking was a continuous speech recognition

**SynKloud's Motion for Rule 11 Sanctions- 2**

program which did not require a speaker to pause between each spoken word. *Id*. ¶ 14. Mr. Poirier first became aware of the DD 2.0 Manual during this litigation.[1] *Id*. at ¶ 15.

Furthermore, Nuance, through 30(b)(6) deponent Stijn Van Even, testified that transferring users was not a feature in Dragon Dictate 2.0. *Id*. at ¶ 16 (Q. Moving forward. So did DragonDictate 2.0 in its functionality allow a user to transfer his or her user profile between two different computers? … A. So the export of transfer files in DragonDictate was not a feature."). The DD 2.0 Manual does not reference the FAQ 10. *Id*. at ¶ 17. While Mr. Poirier was not aware of FAQ 10 during the prosecution of the Asserted Patent, he testified that he would have submitted the FAQ 10 to the USPTO had he known about it at the time. *Id*. at ¶ 18.

Mr. Poirier did know and disclose of the Joel Gould Blog post titled "Moving Voice Files Around" ("Gould Post"). *Id*. at ¶ 19. The steps in the FAQ 10 are cumulative of the steps described in the Gould Post, as they require a user to manually enroll in speech recognition software installed on a destination computer prior to moving a user's speech files only.[2] *Compare* FAQ 10 at ECF No. 11-2, with Gould Post, at ECF No. 90-3, Ex. F.

Despite what the evidence shows, Nuance alleges (without supporting evidence) that Mr. Poirier failing to disclose the DD 2.0 Manual and the FAQ 10 to the USPTO is sufficient to establish that Mr. Poirier withheld the documents with intent to deceive the USPTO. ECF No. 90, ¶ 21. However, discovery has shown that Mr. Poirier did not disclose the DD 2.0 Manual and the FAQ 10 to the USPTO because *he was not aware* of the documents at the time. *Id*. at ¶ 22. Nuance, then, merely relies on the unsubstantiated inference that Mr. Poirier intended to deceive the USPTO because the DD 2.0 Manual and FAQ 10 were not submitted to the USPTO.

---

[1] Nuance did not ask Mr. Poirier when he first became aware of the DD 2.0 Manual during his deposition.
[2] The speech files allegedly transferred using the Gould Post method and the FAQ 10 constitute only a portion of the voice model files in a user's voice model and did not contain any enrollment entries.

**SynKloud's Motion for Rule 11 Sanctions- 3**

Nuance's allegations made in support of its inequitable conduct counterclaim were not made "upon information and belief." *Id*. at ¶ 23. Thus, SynKloud sought the factual basis which it understood Nuance possessed to state its allegations. On November 19, 2020, SynKloud served its First Set of Interrogatories and its First Requests for Production on Nuance. *Id*. at ¶ 24. Interrogatories numbers 1-4 requested the factual bases underlying Nuance's allegations made in support of its inequitable conduct counterclaim, including: Nuance's allegations that Mr. Poirier had seen the FAQ 10 prior to September 1999; Nuance's allegation that General Voice/National Voice were in possession of the DD 2.0 Manual; and Nuance's allegations that Mr. Poirier decided to withhold the DD 2.0 Manual and the FAQ 10 from the USPTO. *Id*. at ¶25. SynKloud's requests for production 1 and 3 requested documents supporting Nuance's allegations relied upon for its inequitable conduct counterclaim. *Id*. ¶ 26.

Nuance's January 11, 2021, response to SynKloud's first set of interrogatories cited to the provisional application of the Asserted Patent as support for its inequitable conduct counterclaims. *Id*. at ¶ 27. However, the only Dragon product discussed in the provisional application and the Asserted Patent is Dragon Naturally Speaking. *Id*.; ECF No. 1-1.

In addition, Nuance produced and cited a printout of General Voice's website from around the time of the provisional application. *Id*. at ¶ 28. This was presumably to demonstrate that General Voice was a reseller of Dragon products[3], however the only Dragon product which appears on General Voice's website, much like in the Asserted Patent, was Dragon Naturally Speaking. *Id*.

On January 14, 2021, counsel for SynKloud contacted counsel for Nuance regarding the lack of production in response to interrogatories numbers 1-4 and requests for production numbers 1 and

---

[3] Presumably, because Nuance failed to include a narrative response to the interrogatories and merely cited to documents absent explanation.

**SynKloud's Motion for Rule 11 Sanctions- 4**

3.[4]  *Id.* at ¶ 29.  Following a phone conference between counsel for the Parties, Nuance supplemented its response to SynKloud's First Set of Interrogatories on February 8, 2021.  *Id.* at ¶ 30.  Nuance's supplemental response added reference to the Gould Post which was submitted to the USPTO during the prosecution of the Asserted Patent, along with examples of *distributor* agreements at or around the 1999 time-period.  *Id.* at ¶ 31.

Neither National Voice nor General Voice were ever distributors of Dragon products, they were *resellers* who purchased Dragon Naturally Speaking products from distributors to resell to consumers.  *Id.* at ¶ 32.  SynKloud notified Nuance of Nuance's failure to produce any supporting documentation for its unsubstantiated inequitable conduct claim in an April 13, 2021 email.  *Id.* at ¶ 33.  In that same email, SynKloud also notified Nuance that the distributor agreements were inapplicable to resellers such as General Voice.  *Id.*

In a June 2021 email, following the May 20, 2021 deposition of Mr. Poirier, SynKloud again contacted Nuance regarding the lack of evidence and support for Nuance's inequitable conduct claim, and further indicated that SynKloud would likely move to dismiss Nuance's inequitable conduct counterclaim.  *Id.* at ¶ 34.  During phone calls following the June email, counsel for Nuance indicated that Nuance would seek leave to amend its counterclaims to add additional allegations to support new bases for an inequitable conduct claim.  *Id.* at ¶ 35.  Nuance never moved to amend its counterclaims. *Id.* at ¶ 36.

On November 29, 2021, SynKloud contacted Nuance to set up a meet and confer conference regarding SynKloud's partial motion for summary judgment on Nuance's inequitable conduct claim. *Id.* at ¶ 37.  In a December 3, 2021 email, following a meet and confer between the Parties, Nuance

---

[4] There were numerous issues with Nuance's production throughout the entirety of the litigation and addressed in this and many other emails.  However, for the purposes of SynKloud's Partial Motion for Summary Judgment, SynKloud focuses on the requests related to Nuance's inequitable conduct claim.

**SynKloud's Motion for Rule 11 Sanctions- 5**

indicated it would not withdraw its inequitable conduct counterclaim because the claim had "significant merit" despite its failure to produce evidence supporting its allegations of inequitable conduct. *Id*. at ¶ 38.

## ARGUMENT

### I. Legal Standard

Federal Rule of Civil Procedure 11(b) provides that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Rule 11 allows for sanctions should a court determine that a party violated Rule 11(b). *Id*. at 11(c).

Rule 11 requires that an attorney conduct a reasonable inquiry of the factual and legal basis for a claim before filing. *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003). This duty extends to a party asserting an affirmative defense. *Tura v. Sherwin-Williams Co.*, Nos. 90-3419, 90-3445, 1991 U.S. App. LEXIS 11792, at *8 (6th Cir. May 28, 1991) quoting *White v. General Motors Corp*., 908 F.2d 675, 682 (10th Cir. 1990) ("part of a reasonable attorney's prefiling investigation must include

**SynKloud's Motion for Rule 11 Sanctions- 6**

determining whether any obvious affirmative defenses bar the case.") Rule 11 further imposes a duty upon counsel, after submitting filings, to reassess their clients' claims throughout the litigation. *Rodriguez v. Banco Cent.*, 155 F.R.D. 403, 408 (D.P.R. 1994). Continuing to litigate a claim after becoming aware of a lack of factual basis for the claim is vexatious, unreasonable, and sanctionable under Rule 11. *Id*.

> II.  **Nuance's continued assertion of its unsubstantiated inequitable conduct counterclaim absent factual or legal support warrants Rule 11 sanctions**

As outlined in greater detail in SynKloud's Memorandum in Support of its Partial Motion for Summary Judgment (ECF No. 89)[5], Nuance is limited to asserting the bases which it has pled in its Answer and Counterclaims. ECF No. 89 at pp 8-9.

In the instant case, Nuance has alleged that Mr. Poirier failing to disclose the DD 2.0 Manual and the FAQ 10 to the USPTO during the prosecution of his patent application constituted inequitable conduct. ECF No. 11, ¶¶ 36-59. Nuance has not moved to amend its Answer and Counterclaims, thus it cannot at this point raise alternate bases to support its inequitable conduct claim.

There are two separate elements for proving inequitable conduct: materiality and intent to deceive. *Rothschild v. Cree, Inc.*, 711 F. Supp. 2d 173, 208 (D. Mass. 2010); *ESpeed, Inc. v. BrokerTec USA, LLC*, 480 F.3d 1129, 1135 (Fed. Cir. 2007) (quoting *Pharmacia Corp. v. Par Pharm., Inc.*, 417 F.3d 1369, 1373 (Fed. Cir. 2005) ("[I]nequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive.") Both of elements must be shown by clear and convincing evidence. *Rothschild*, F. Supp. 2d at 208.

Fatally, both references cited by Nuance are not material as a matter of law. 37 C.F.R. §1.56 ("information is material to patentability when it is not cumulative to information already of record

---

[5] Incorporated fully herein.

**SynKloud's Motion for Rule 11 Sanctions- 7**

or being made of record in the application."); *Color Kinetics Inc. v. Tir Sys.*, No. 03-CV-12491-MEL, 2007 U.S. Dist. LEXIS 107666, at *5 (D. Mass. Feb. 8, 2007).  This is long settled law and is codified in the regulatory language itself.

Yet Nuance has failed to allege why the withheld information (DD 2.0 Manual and FAQ 10) is material and not cumulative, and how an examiner would have used this information. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329-30 (Fed. Cir. 2009) (stating that allegations identifying particular information absent from information "are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims.")

Nor could it, as there is no information which is not cumulative over references disclosed to the USPTO during the prosecution of the Asserted Patent, such as the IBM ViaVoice Manual and the Joel Gould "Moving Voice Files Around" blog post.  *See* ECF No. 89 at pp. 9-10.  Nuance has breached its duty to assess (and reassess throughout the litigation) the merits of its inequitable conduct claim, as the long-settled law makes clear that where the references are cumulative, they cannot be material.  This alone warrants the finding that Nuance violated Rule 11.  *Corroon v. Reeve*, 258 F.3d 86, 92 (2d Cir. 2001) ("Rule 11 is violated when it is clear under existing precedents that a pleading has no chance of success and there is no reasonable argument to extend, modify, or reverse the law as it stands."); *Chemfree Corp. v. J. Walter, Inc.*, No. 1:04-CV-3711-JTC, 2008 U.S. Dist. LEXIS 85555, at *25 (N.D. Ga. June 10, 2008) ("No reasonable attorney would assert an inequitable conduct defense based upon [a reference] knowing that [said reference] was cumulative to prior art already cited to the PTO.").

Nuance's support for the intent prong of its inequitable conduct claim is equally non-existent. Nuance relied on allegations which have not only been contested, but they have also been proven

**SynKloud's Motion for Rule 11 Sanctions- 8**

entirely false. Nuance's only allegation regarding the intent prong of its inequitable conduct claim reads: "These facts are sufficient to support the conclusion that Poirier withheld the [DD 2.0 Manual] and [FAQ 10] references with the intent to deceive the USPTO." ECF No. 11 at ¶ 59. In other words, Nuance believes that its allegations that Mr. Poirier knew about the DD 2.0 Manual and the FAQ 10 and withheld the references from the USPTO establish, by clear and convincing evidence, support for the inference that Mr. Poirier did not disclose the references with the intent to deceive the USPTO.

However, Mr. Poirier *was not aware* of the references until Nuance filed the references along with its Answer and Counterclaim in this litigation. ECF No. 89 at pp. 11-12. Again, it is elementary and settled law that a patent applicant *must know* of a reference to *intentionally* attempt to deceive the USPTO. *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987) ("Applicant must be chargeable with knowledge of the existence of the prior art or information, for it is impossible to disclose the unknown.")

Equally troublesome is Nuance's argument that failure to disclose a reference which is known sufficiently establishes intent to deceive, as this argument again runs entirely contrary to established case law. *Upjohn Co. v. Mova Pharm. Co.*, 225 F.3d 1306, 1312 (Fed. Cir. 2000) ("However, intent to deceive cannot be inferred solely from the fact that the information was not disclosed; there must be a factual basis for a finding of deceptive intent") (internal quotations omitted).

### III. Nuance disregards the lack of support for its unsubstantiated inequitable conduct claim while continuing to assert its meritless claim

Nuance's allegations supporting its inequitable conduct counterclaim were not made "upon information and belief," indicating that Nuance had firsthand knowledge of facts which supported its allegations.[6] ECF No. 11, ¶¶ 36-59. Accordingly, SynKloud propounded discovery requesting

---

[6] *See, e.g., Galicia v. Ice Cream House on Bedford Ave LLC*, No. 16-CV-6738 (CBA) (PK), 2017 U.S. Dist. LEXIS 213306, at *3 (E.D.N.Y. Dec. 28, 2017) ("When a plaintiff sets out allegations on information and belief, he is

**SynKloud's Motion for Rule 11 Sanctions- 9**

Nuance's factual bases for its allegations. ECF No. 90, ¶¶ 24-26. Nuance failed to produce any factual support for its allegations of inequitable conduct. ECF No. 90, ¶¶ 27-32. The Parties continued to confer on the issue, with SynKloud indicating that it would move to dismiss the claim due to the lack of any factual support, and Nuance indicating that it would move to amend its Answer and Counterclaims to assert new bases for its inequitable conduct claim (tacitly admitting to the complete lack of merit in its currently asserted bases). ECF No. 90, ¶¶ 29, 33-38.

Despite the lack of any factual support for its inequitable conduct claim (and its awareness thereof), Nuance refused to withdraw its unsubstantiated inequitable conduct claim and instead forced SynKloud to expend vital time and limited resources on its Partial Motion for Summary Judgment to dismiss Nuance's entirely meritless claim. Yet, the case law and the facts are clear – every inference Nuance asks this Court to make in its unsubstantiated inequitable conduct counterclaim contravenes long-settled caselaw, and several key factual allegations it made in support of its counterclaim not only lack support, but have been proven entirely spurious.

Namely, Nuance asserts that the DD 2.0 Manual and FAQ 10 (the "References") are material. Nuance does not allege that the references are not cumulative. Nuance further makes no attempt and fails to explain the additional information, if any, found in the References which differs from the information found in previously disclosed references. Again, the law is clear – cumulative references cannot be material. Nuance also falsely stated that Mr. Poirier was aware of the References during the prosecution of the Asserted Patent. Yet an applicant cannot disclose references of which he is not aware. Nuance had several opportunities to withdraw its claim, yet, somehow, it takes the

---

representing that he has a good-faith reason for believing what he is saying, *but acknowledging that his allegations are based on secondhand information that he believes to be true*.") (emphasis added).

**SynKloud's Motion for Rule 11 Sanctions- 10**

unreasonable position that its unsubstantiated claim has "significant merit." ECF No. 90, ¶ 38. Nuance's complete failure to avoid demonstrably vexatious litigation warrants Rule 11 sanctions.

## CONCLUSION

For the reasons stated above, SynKloud respectfully requests that the Court issue sanctions against Nuance for the costs incurred by SynKloud relating to Nuance's inequitable conduct counterclaim, including, without limitation: propounding discovery pertaining to the factual bases for Nuance's inequitable conduct counterclaim, repeated follow-up conferences regarding Nuance's insufficient responses to SynKloud's discovery requests on the counterclaim, and advancing SynKloud's Partial Motion for Summary Judgment.

|  |  |
|---|---|
|  | Respectfully Submitted by SynKloud Technologies, LLC, |
|  | By and through its attorneys, |
| Dated:  March 3, 2022 | /s/ Catherine I. Rajwani<br>Catherine I. Rajwani, Esq. (BBO# 674443)<br>Herling Romero, Esq. (BBO# 703870)<br>THE HARBOR LAW GROUP<br>300 West Main Street, Building A, Unit 1<br>Northborough, MA 01532<br>Phone:  (508) 393-9244<br>Fax:  (508) 393-9245<br>Email:  crajwani@harborlaw.com<br>Email:  hromero@harborlaw.com |

**SynKloud's Motion for Rule 11 Sanctions- 11**

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2022 the foregoing document was served electronically on all counsel of record via email pursuant to Federal Rule of Civil Procedure 11.  I further certify that the foregoing motion was filed via ECF on March 3, 2022, which provides service to all counsel of record.

*/s/ Catherine I. Rajwani*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for SynKloud, served the foregoing motion on February 7, 2022 and, pursuant to Federal Rule of Civil Procedure Rule 11(c)(2), provided Nuance with 21 days after service to correct the challenged inequitable conduct claim.  Nuance did not correct or withdraw the challenged inequitable conduct claim within this 21-day period. Thus, pursuant to Rule 11(c)(2), SynKloud is now filing the foregoing motion with this Court.

*/s/ Catherine I. Rajwani*

**SynKloud's Motion for Rule 11 Sanctions- 12**