UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

SYNKLOUD TECHNOLOGIES, LLC,

Plaintiff,

v.

NUANCE COMMUNICATIONS, INC.,

Defendant.

**Civil Action No. 1:20-cv-10564**
**JURY TRIAL DEMANDED**

**PLAINTIFF SYNKLOUD TECHNOLOGIES, LLC'S OPPOSITION TO**
**NUANCE COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT**

# Contents

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

   I.    The Term "Enrollment Entries" is Definite as Construed by this Court. ........................... 3

      a.   Nuance is not asserting, and has never asserted that "enroll" is indefinite. ..................... 4

      b.   The same evidence supporting the construction of "enroll" as "register" supports the construction of "enrollment entries." ......................................................................... 5

      c.   Nuance has not shown that the term "enrollment entries" is insolubly ambiguous. ......... 5

   II.   Nuance Cannot Argue a *Brand-New* Construction for "Enrollment Entries" in the Guise of a Challenge to the Sufficiency of the Evidence of Infringement. ............................................... 7

   III.   Nuance Cannot Belatedly Import a Registry Limitation into the Asserted Claims from the Written Description ............................................................................................. 10

   IV.   The Accused Products Infringe the Asserted Claims of the '248 Patent ..................... 11

      a.   Materially relevant facts ................................................................................. 11

      b.   SynKloud has extensive evidence demonstrating infringement of Claim 29 by the Accused Products. ........................................................................................... 13

      c.   SynKloud provided sufficient evidence demonstrating infringement of Claim 34 by the Accused Products. ........................................................................................... 17

      d.   SynKloud provided sufficient evidence demonstrating infringement of Claim 51 by the Accused Products. ........................................................................................... 19

CONCLUSION ................................................................................................................ 20

SynKloud respectfully opposes Nuance's motion for summary judgment (ECF No. 87) (referred to herein as "Motion"). Nuance moved for judgment of invalidity and noninfringement of the Asserted Claims[1] of U.S. Patent No. RE44,248 (" '248 Patent" or the "Asserted Patent").

## INTRODUCTION

The '248 Patent discloses a number of inventions; at issue in this litigation is voice model mobility ("VMM"). VMM technology allows a user to move his/her voice model from computer one, on which the user has enrolled into speech recognition software and performed hours of ongoing training, to computer two, without requiring additional enrollment and ongoing training. ECF Nos. 1-1 at 6:36-39 and 87-5 at p. 11.

The '248 Patent claims the software instructions to effectuate the transfer of a user's voice model. *Id.* The software instructions cause the following steps to occur:

1. On computer one, an investigation or discovery of what is included in a user voice model to record (*i.e.*, a catalog accurately) the voice model files and enrollment entries and then copy the files and entries to a media.[2] *See* ECF Nos. 1-1 at 6:51-7:26 and 87-5 at p. 11.

2. On computer two, a continuation of the automated software process allows a user to select the voice model on the transfer media, to copy the user voice model and install the specific enrollment entries and user voice model files to computer two; this process allows the destination computer to enroll the user in the speech recognition software on computer two and increases the accuracy of speech recognition for the user.[3] *See* ECF Nos. 1-1 at 7:27-64 and 87-5 at p. 11.

At the time of the filing of the application for the '248 Patent, the "state of the art" speech

---

[1] SynKloud asserts claims 29, 30, 31, 34, 35, 36, and 51 against Nuance (the "Asserted Claims"). ECF No. 87-5, p. 82; ECF No. 87, p. 8 n.1.

[2] *See, e.g.*, ECF No. 1-1 at claim 29 "a) record the user's voice model files and enrollment entries, b) store the user's voice model files and enrollment entries in recoverable form as the user's Voice Model."

[3] *See, e.g.*, ECF No. 1-1 at claim 29 "c) transfer the user's stored Voice Model to a destination computer, the destination computer including a destination installation of the speech program; [d] wherein the transfer of the user's Voice Model to the destination computer enables the destination computer to enroll the user into the speech recognition computer program on the destination computer and increases the accuracy of the speech recognition computer program on the destination computer."

recognition software included "IBM ViaVoice, L&H Voice Express, Philips Speech Pro from Philips and Dragon Naturally Speaking."  ECF No. 1-1 at 2:7-11.  Different software stored voice model files and enrollment entries in different locations.  The exemplary embodiment in the Patent, Dragon Naturally Speaking ("DNS") version 3, stored enrollment entries, in part, in the Windows registry. *See id*. at 7:24-26.  Thus, some of the discussion concerning the recovery of DNS enrollment entries references the registry. *See id*.

Enrollment entries are simply the information that the speech recognition software elicited from the user when he or she enrolled. *See* ECF No. 46 at p. 11; *see also* Cohen Deposition Transcript ("Cohen Tr."), attached as **Exhibit A** to the Romero Declaration and incorporated by reference, at 24:11-25:2.  The enrollment entries can be put in the registry but there is nothing special about the putting these parameters in the registry. *See* Cohen Depo. Tr., 24:11-25:2.  "You can put the enrollment information anywhere as long as you can recover it from anywhere." *Id*.

At its core, Nuance's Motion reads into the Asserted Claims a limitation that the voice model enrollment entries must be located in the Windows registry.  Nuance then relies upon its new definition of enrollment entries as registry information to craft a noninfringement defense. Nuance is essentially proffering a claim construction argument in the guise of a challenge to SynKloud's sufficiency of evidence of infringement.[4]  Had Nuance wanted to tee up its summary judgment position based on this new claim construction, "it could (and should) have sought a construction to that effect.'"[5]

SynKloud filed the instant lawsuit in March of 2020.  ECF No. 1.  SynKloud accuses

---

[4] *See Comcast IP Holdings I LLC v. Sprint Communs. Co., L.P.*, 850 F.3d 1302, 1311 (Fed. Cir. 2017) (Ruling against defendant relying on new claim construction as a challenge to sufficiency of evidence).
[5] *Skyhook Wireless, Inc. v. Google, Inc.*, 159 F. Supp. 3d 144, 157 (D. Mass. 2015) (quoting *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 520 (Fed. Cir. 2012)).

fifteen Dragon Naturally Speaking software products ("Accused Products"[6]) of infringing the Asserted Claims of the '248 Patent. SynKloud has provided *detailed* infringement contentions[7] to Nuance (in excess of 100 pages) and an exhaustive expert report of infringement (ECF Nos. 87-5 & 87-6). SynKloud has provided extensive evidence of Nuance's infringement of the Asserted Claims using the Court's plain language constructions of claim terms "enrollment entries" and "record."

## ARGUMENT

### I.    The Term "Enrollment Entries" is Definite as Construed by this Court.

An issued patent is presumed valid and, therefore, invalidity must be proven by clear and convincing evidence. 35 U.S.C. § 282.

"The fact that some claim language may not be precise does not automatically render a claim invalid as only a 'reasonable degree of particularity and definiteness' is required." *VLT, Inc. v. Artesyn Techs., Inc.*, 238 F. Supp. 2d 339, 342 (D. Mass. 2003) (quoting *Exxon Research and Engineering Co. v. United States*, 265 F.3d 1371, 1380 (Fed. Cir. 2001)). "[T]he fact that the parties disagree about claim scope does not of itself render the claim invalid." *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002).

Instead, to be found definite, a claim must only be "amenable to construction, however difficult that task may be." *VLT, Inc.* 238 F. Supp. 2d at 342 (quoting *Exxon Research and Engineering*, 265 F. 3d at 1375). A claim is invalid as indefinite only where it is insolubly ambiguous. *See id.* Because a presumption of validity exists under 35 U.S.C. § 282, "close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of

---

[6] SynKloud accuses Dragon Naturally Speaking Version 12 Professional, Legal, Premium, and Medical; Dragon Naturally Speaking Version 12.5 Legal, Premium, and Professional; Dragon Naturally Speaking Version 13 Professional, Premium, Legal, and Medical; Dragon Naturally Speaking Version 14 Professional; and Dragon Naturally Speaking Version 15 Professional, Legal, and Medical (collectively, the "Accused Products"). ECF No. 87-5, p. 65. Nuance has stipulated that the Accused Products all function in the same manner. ECF No. 87-5, p. 69.
[7] Nuance cites to **only a portion of** SynKloud's infringement contentions in its Motion. SynKloud has included the **entirety of its contentions (with exhibits)** as attachments to the Romero Declaration. *See* **Exhibits E, H & I.**

3

the patentee." *VLT, Inc.*, 238 F. Supp. 2d at 342 (quoting *Exxon Research and Engineering*, 265 F.3d at 1379).

   *a. Nuance is not asserting, and has never asserted that "enroll" is indefinite.*

This Court construed the term "enroll" as "register" stating *"[t]he plain language of the claims* supports SynKloud's construction of [enroll] to mean 'register.'" ECF No. 46, p. 8. (emphasis added).   As support, this Court noted several preambles referencing a computer program "into which…a first user is enrolled."   *Id*. citing the '248 Patent (ECF No. 1-1), at 19:15–16; *see also id*. at 19:56–57; *id*. at 21:9–11; *id.* at 21:58–59; *id.* at 22:38–40.  Furthermore, this Court noted that "the claims themselves reference 'enroll[ing]' the user into a program on the destination computer."  ECF No. 46, p. 8 citing '248 Patent at 19:28-31; *id*. at 20:6-9; *id*. at 21:28-32; *id*. at 22:5-10; *id*. at 22:41-46.

In addition to the claim language, this Court noted several points within the '248 Patent's specification using enrollment in a manner best understood as registration.  ECF No. 46, p. 10. For instance, the Patent distinguishes the term "enroll" and train several times.  ECF No. 1-1, at 4:7–13 (noting that "the creation of a new type of speaker voice … can be applied to many people without the prerequisite of training or voice recognition system enrollment."); *id*. at 10:17–19 ("…the 'Super Voice Model' eliminates the need for specific user training or enrolling into a voice recognition system."); *cf. id*. at 2:66 ("[T]raining can be time consuming and ongoing task."); *id*. 3:18-43 (indicating training entails an ongoing process beyond initial enrollment.)

In addition to the intrinsic support, this Court found that construing the term "enroll" as "register" was consistent with the plain meaning of the term.   ECF No. 46, p. 10 ("The customary meaning of the word enroll is to 'insert, register, or enter in a list, catalog, or roll.' *Enroll*, Merriam-Webster Dictionary, www.merriam-webster.com/dictionary/enroll (last visited

May 27, 2021); *see also* Enroll, Dictionary.com, https://www.dictionary.com/browse/enroll (defining 'enroll' as 'to write the name of (a person) in a roll or register; place upon a list; register'; 'to enlist (oneself)'; or 'to put in a record; record')").

Thus, using the plain language of the Patent claims, supported by the specification and extrinsic evidence, this Court construed the term "enroll" as "register."  ECF No. 46, p. 11.

> b. *The same evidence supporting the construction of "enroll" as "register" supports the construction of "enrollment entries."*

"Enrollment entries" are "entries that a user makes during the registration process."  ECF No. 46, p. 11.  The Court incorporated its construction of the term "enroll" stating: "[b]ecause the Court construes 'enroll' as 'register,' it follows that 'enrollment entries' are the entries that a user makes during the registration process."  *Id*.  Thus, the construction of "enrollment entries" inherently incorporates the support for the term "enroll," *which Nuance does not argue is indefinite.*

> c. *Nuance has not shown that the term "enrollment entries" is insolubly ambiguous.*

Nuance's Motion attempts to fabricate confusion about a POSITA's understanding of "enrollment entries" without focusing on the Court's construction of "enroll" or the language of the Asserted Claims.   Yet, when proper context and relevant testimony is considered, the term is simply definite.   For instance, Mr. Poirier testified that "[e]nrollment entries are when you register with speech recognition software, it asks to input certain things, like the username, the accent, the language, the age."   *See* Poirier Deposition Transcript ("Poirier Tr.") attached as **Exhibit B** to the Romero Decl. and incorporated by reference, at 76:6-9.   Dr. Cohen is in accord: "[e]nrollment entries are the entries, the information that the system has elicited from the user when he enrolled."   *See* Cohen Tr. at 24:11-13.   Dr. Cohen provided examples[8] of

---

[8] The '248 Patent references "state of the art" speech recognition software available at the time the '248 Patent Application was filed.  *See* ECF No. 1-1 at 2:7-13.  The collection process for enrollment entries in the Accused

enrollment entries collected during user registration[9] with DNS software:



ECF No. 87-6, p. 179.   Dr. Cohen's report also references the *exact locations* of this user

information entered during registration:

> Enrollment Entries Storage:
>
> The username enrollment entry is stored as a folder name, the default location is within the Dragon Naturally Speaking folder structure within the "Users" folder.  In this example, the enrollment entry dp200 caused a folder to be created called "dp200" (shown below) and is where all dp200 user enrollment entries and voice model files will be stored.
>
> Enrollment Entries are stored in multiple folders and multiple files.  For example the enrollment entries are stored in files within the "current" and the "backup" folder for each user's DNS folder structures as shown below:

ECF No. 87-6, p. 180.

Despite the unchallenged construction of "enroll," support in the Asserted Patent, and the

term's plain language meaning, Nuance pretends that the claim term "enrollment entries" is

susceptible to different meanings.   Nuance manufactures confusion in part based on (i) the

rejected notion that enrollment means training and (ii) its brand new construction about *where*

---

Products (*e.g.,* Dragon Naturally Speaking Version 15) is similar to the versions existing when the '248 Patent Application was filed.  *See* Cohen Report on Validity attached as **Exhibit C** to Romero Decl. and incorporated by reference at pp. 43-45.  Examples of "enrollment entries" collected by IBM Via-Voice "state of the art" software are shown at ECF No. 39-1 at pp. 4, 8-10.  *Id.*

[9] A user must enroll before a speech recognition software generates a voice model.  ECF No. 87-5, p. 82.  This is because, in speaker dependent speech recognition software such as the Accused Products, the voice model and corresponding speech recognition accuracy is strictly associated with a specific user.  ECF No. 87-5, pp. 40, 43-44.  Once a user is created, the speech recognition program can use enrollment entries to assist in generating the full user voice model (*i.e.*, user profile).  *Id.*

enrollment entries *must* be located (*i.e.* in the Windows registry)[10].    However, when questioned about the *existence* of DNS's "enrollment entries" (*i.e.* user information gathered during registration into DNS), Nuance's technical expert and employee, Mr. Van Even, acknowledged the collected entries for the Accused Products, confirmed their location, and acknowledged that they are transferred during the import/export user profile process.    *See* Van Even Deposition Transcript ("Van Even Tr.") attached as **Exhibit D** to Romero Decl. and incorporated by reference, at 76:18 – 81:21.

Furthermore, Nuance cannot have it both ways, *first* arguing in its Motion that "enrollment entries" is indefinite and *then* arguing a *newly proposed construction* that requires enrollment entries be saved within the Windows registry.   Nuance reads the registry location limitation into the Asserted Claims to craft a noninfringement defense.   Nuance has not (and cannot) establish, by clear and convincing evidence (or otherwise) that the term "enrollment entries" is indefinite and no material issues of fact remain.   The term is definite.

## II.    Nuance Cannot Argue a *Brand-New* Construction for "Enrollment Entries" in the Guise of a Challenge to the Sufficiency of the Evidence of Infringement.

In its Motion, Nuance relies upon a *new* construction for the term "enrollment entries" (one that requires the entries be stored in the Windows registry) to create a *new* noninfringement[11] argument.   Nuance is essentially proffering a claim construction argument in the guise of a challenge to the sufficiency of SynKloud's evidence of infringement. *See Comcast IP Holdings I LLC v. Sprint Communs. Co., L.P.*, 850 F.3d 1302, 1311 (Fed. Cir. 2017) (quoting *ePlus, Inc.*, 700 F.3d at 520) (Ruling against defendant relying on new claim construction as a challenge to sufficiency of evidence).

---

[10] The Windows registry is merely a location in which programs may store information.  **Ex. C**, at p. 42 ("[T]he registry can, in theory, store any program information.")

[11] Nuance never indicated in its noninfringement contentions that enrollment entries must be stored in a source computer's Windows registry.  *See, e.g.*, **Exhibit F** to Romero Decl. and incorporated by reference (Nuance noninfringement contentions for claim 29).

"If [Defendant] wanted to tee up a summary judgment position based on a particular construction, 'it could (and should) have sought a construction to that effect.'" *Skyhook Wireless, Inc. v. Google, Inc.*, 159 F. Supp. 3d 144, 157 (D. Mass. 2015) (quoting *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 520 (Fed. Cir. 2012)). "The Federal Circuit has held that 'district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims,' *especially where the parties do not raise a dispute until after the Markman stage.*" *GPNE Corp. v. Apple Inc.*, 108 F. Supp. 3d 839, 851–52 (N.D. Cal. 2015) (quoting *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)) (emphases added).

Prior to *Markman*, Nuance argued "enrollment means training," ECF No. 30, p. 6, while simultaneously contending that the term "enrollment entries" was indefinite and/or meant training entries. ECF No. 33, p. 5 ("Nuance has cited extensive intrinsic evidence demonstrating that *enrollment entries* means training entries."). This Court disposed of Nuance's proposed construction in its claim construction order. ECF No. 46, p. 9 ("Nuance proposes a definition of enroll as 'train,' but the Court finds it significant that there is a distinction between the two terms 'training' and 'enrollment' throughout the specification.").

Nuance never before argued, as it does now in its Motion, that "enrollment entries" must be located within the Windows registry on the source computer. Nuance asks this Court to read a Windows registry location limitation into the Asserted Claims, contrary to the plain language of the Claims themselves. Nuance then argues that the Accused Products cannot infringe because the "enrollment entries" are not saved within the Windows registry. This approach is improper as a matter of law. If Nuance "desired such a narrow definition, it could (and should) have sought a construction to that effect." *Comcast IP Holdings I LLC*, 850 F.3d at 1311 (quoting *ePlus, Inc.*, 700 F.3d at 520).

8

The noninfringement portion of Nuance's Motion hinges upon this newly added limitation.  Nuance alleges that the importance of the "enrollment entries" is *where* they are located (*i.e.*, the Windows registry).  Yet, this entirely misses the mark as Dr. Cohen explained:

> Enrollment entries are the entries, the information that the system has elicited from the user when he enrolled. The enrollment entries can be put in the registry as is the case in Mr. Poirier's analysis here. But there's nothing special about the putting it them in the registry. ***You can put the enrollment information anywhere as long as you can recover it from anywhere***. So you can put it in a file. If you happen to put the enrollment entries in a file that are in the directory with the other voice model files, then that file contains the enrollment entries and you can recover them from that. ***The fact they're in the registry doesn't have anything to do with the fact that they're enrollment entries***. ***You need to recover them.***

Cohen Tr.  24:11-25:2 (emphasis added).

This highlights a simple fact which Nuance elects to ignore – it is not the particular location of the "enrollment entries" on the source computer which matters, but the *recovery* of the information through the recording, storing, and transferring elements of the Asserted Claims. This is because "enrollment entries" contain important information which associates a specific user with his or her voice model files.  Without the "enrollment entries," the voice model files cannot be linked to the specific user.  Dr. Cohen's expert report explains that enrollment allows "speech recognition software to associate a user with a specific voice model."  ECF No. 87-5, p. 43.  Information such as username, language, region, accent, age, among others, all play a role in strictly associating speaker dependent speech recognition software with a specific user.  *See id.*; *see also id.* at p. 40.

Nuance's own publications acknowledge this, as they must, for speaker *dependent* speech recognition software.  *See* Screenshot *infra* taken from Claim 29 Infringement Contentions, attached to Romero Decl. as **Exhibit E** and incorporated by reference,  p. 3.

9

**Getting Started and Creating a Profile**

"Dragon is speaker-dependent. It relies on information specific to you, including what words and phrases you use often, how you sound, what audio device you use, and what settings you have; it stores this in a set of files referred to collectively as your "user profile" or just "profile. Each person who uses Dragon must have his or her own profile. Your profile is important; the more personalized it is, the better your experience will be."

*https://www.nuance.com/content/dam/nuance/en_us/collateral/dragon/guide/gd-dragon-professional-workbook-en-us.pdf*

The noninfringement portion of Nuance's Motion hinges on its new definition of "enrollment entries."  Nuance now argues that its Accused Products do not infringe because no Windows registry information is recorded, stored, or transferred.

### III.    Nuance Cannot Belatedly Import a Registry Limitation into the Asserted Claims from the Written Description

Courts frequently and consistently warn against reading limitations into the claims from the written description, particularly where, as here, there is only one exemplary form or embodiment disclosed in a patent's written description.  *VLT Corp. v. Lambda Elecs*., 238 F. Supp. 2d 347, 351 (D. Mass. 2003) quoting *Texas Digital Systems, Inc. v. Telegenix, Inc*., 308 F.3d 1193 (Fed. Cir. 2002) ("reading the words in such a confined way would mandate the wrong result and would violate our proscription of not reading limitations from the specification into the claims themselves."); *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (holding a court should "not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment.")

The Asserted Patent references several speech recognition software programs in the background of the invention, some of which did not store enrollment entries within the registry. ECF No. 1-1, at 2:7-11 ("IBM Via-Voice, L&H Voice Express, Philips Speech Pro from Philips, Dragon Naturally Speaking from Dragon Systems.")  As an exemplary embodiment, the Asserted Patent demonstrates the process of transferring a voice model created by Dragon Naturally Speaking Version 3.  ECF No. 87-5, p. 20.

At the highest level, the claimed technology involves the discovery and cataloging of a user's "enrollment entries" and "voice model files," storing said "enrollment entries" and "voice model files," and transferring them to a destination computer.  ECF No. 1-1, at 5:55-60.  Because Dragon Naturally Speaking version 3 stored a portion of the "enrollment entries" within the Windows registry, the exemplary embodiment includes discovering and cataloging the "enrollment entries" found within the Windows registry.  ECF No. 87-5, pp. 20-21; '248 Patent, at 6:31-35.  There is *no language* in the '248 Patent or the Asserted Claims which states that "enrollment entries" *must* be stored within the Windows registry.  Had the Asserted Patent included as its example speech recognition software that did not store "enrollment entries" within the Windows registry, then that example would discover and catalog "enrollment entries" from wherever they were located on the source computer.[12]

Importing a registry limitation into the claims, as Nuance seeks to do, would run afoul of long-established patent law.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) citing *SciMed Life Sys.*, 242 F.3d at 1340 (characterizing reading a limitation from the written description into the claims as "one of the cardinal sins of patent law").

## IV.    The Accused Products Infringe the Asserted Claims of the '248 Patent

### a.  *Materially relevant facts*

This Court construed the term "enrollment entries" as the "entries that a user makes during the registration process."  ECF No. 46, p. 11.  "Enrollment entries" allow speech recognition software to associate a specific user with a specific voice model.  ECF No. 87-5, p.

---

[12] Nuance quotes *Markman* briefing and testimony pertaining to the **"recording means" limitation included in claims 8 & 15** to support its contention that the registry location limitation should be included in the Asserted Claims.  ECF No. 87, pp. 4, 15.  However, means-plus-function claim language, unlike other claim language, requires a patentee to clearly link and identify structure in the specification which performs the claimed function. *Noah Sys. Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012).  Nuance uses these "recording means" quotations out of context to support its contention that the registry limitation should be imported into the "record" the "enrollment entries" element.  The term "recording means" has been found to be indefinite.  Using quotes out of context for "recording means" to support Nuance's brand-new construction of "record" is improper.

43.   Common "enrollment entries" include the username, language, region, accent, age, and vocabulary.  *Id*. at pp. 43-44.

This Court construed the term "record" as "catalog accurately."  ECF No. 46, p. 13.  The "record" element involves the discovery and cataloging of a user's "enrollment entries" and "voice model files."  *See* ECF No. 1-1 at claim 29.  This process involves identifying and locating the file structure for a given speech recognition software.  *See* Poirier Tr. 82:20-83:3. Once the file structure associated with the speech recognition software is identified, the claimed technology begins performing a recursive search, meaning it begins at the highest level folders in the file structure, identifies all files and folders therein, then proceeds to check the contents of any and all subfolders until all files are identified.  *See* Poirier Tr. 83:4-11; ECF No. 87-5, p. 23 ("The recursive process continues until all files for every directory (full voice model) are transferred as shown by 'No More Files' to copy status for each directory.").

The "record" element accurately catalogs the user's voice model, including all "voice model files" and "enrollment entries."  While the DNS embodiment disclosed in the Asserted Patent saved "enrollment entries" in the Windows registry, this is merely *an example of a location* in which the "enrollment entries" can be stored on a source computer.  *See* Cohen Tr., 24:22-24 ("***The fact they're in the registry doesn't have anything to do with the fact that they're enrollment entries.***") (emphases added); **Ex. C**., p. 42 ("In the embodiment outlined in the Asserted Patent, it is simply the case that enrollment entries, such as username and accent, were stored in the registry by Dragon Naturally Speaking 3.0, which was the example speech recognition software used for the embodiment in the patent.")

Nuance ignores this Court's construction of the terms "enrollment entries" and "record," and the plain language of the claims, and instead seeks to read a Windows registry limitation into

the claims from the written description – a cardinal sin of patent law.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) citing *SciMed Life Sys.*, 242 F.3d at 1340.

   b.  *SynKloud has extensive evidence demonstrating infringement of Claim 29 by the Accused Products.*

   **Element (a) record the user's voice model files and enrollment entries:** Nuance contends that none of the Accused Products meet element (a) of Claim 29.[13]  Its argument is premised on a new construction of "enrollment entries" requiring the storing of "enrollment entries" in the Windows registry.  Neither the Court's construction of "enrollment entries" nor the language of the Asserted Claims themselves are so limited.

   Dr. Cohen and SynKloud's infringement contentions detail the supporting evidence demonstrating how the Accused Products practice the "record" element.  First, SynKloud's infringement contentions demonstrate the collection of "enrollment entries" including name, region, accent, and vocabulary type by the Accused Products.  **Ex. E**, p. 19.  SynKloud's infringement contentions then show the location of both the "enrollment entries" (*id*. at pp. 20-21) and "voice model files" (*id*. at 22) in the Accused Products.

   Further, SynKloud's infringement contentions detail the locations of the "enrollment entries" and "voice model files" in the Backup Folder (**Ex. E**, pp. 20-23) and evidence that the Accused Products catalog accurately "enrollment entries" and "voice model files" by reference to the Dragon.log file.[14]  **Ex. E**, pp. 20-23.  Dr. Cohen explains how the Dragon.log file confirms that the Accused Products use a recursive function to record "voice model files" and "enrollment

---

[13] ECF No. 1-1 at claim 29(a).

[14] SynKloud confirmed its understanding with Nuance's technical expert Mr. Van Even during his deposition.  Van Even Tr., 76:18 – 81:17; *see also* Van Even Deposition Exhibit I, attached to Romero Decl. as **Exhibit J** and incorporated by reference.

entries" in the user's active voice model[15] located in the Current Folder when copying to the Backup Folder.  ECF No. 87-5, pp. 76, 82.

The Dragon.log file in SynKloud's infringement contentions verifies that the Accused Products discover all folders and files in a user's Current folder, one by one, and lists the file and folder names.  **Ex. E**, pp. 6-8, 22-23, 28-49 ("enrollment entries" are highlighted in orange and "voice model files" are highlighted in blue).  The Dragon.log file confirms the accurate location and origin of a user's "enrollment entries" and "voice model files."  **Ex. E,** pp. 22-23.

The Accused Products perform this recursive search until all folders and files are discovered and cataloged.  ECF No. 87-5, p. 76 ("[the Accused Products] continue to cascade (walk through) to lower levels, until they get to the last file within a subfolder which may be within more folders."); *see also* Nuance 30(b)(6) Deposition Transcript, Desmond, ("Desmond Tr.") attached to Romero Decl. as **Exhibit G** and incorporated by reference, at 45:16; *id.* at 45:19-20 ("starting at the top of the folder and just walking through the listing"); *id*. at 111:6-12; *id*. at 116:21-117:11.  Once all files and folders are discovered and copied, the Dragon.log file indicates that the record is complete.  **Ex. E**, p. 23 ("There are no more files.").

Dr. Cohen cited to and incorporated SynKloud's infringement contentions which include this and more detail, including the complete Dragon.log file contents which confirm that the entirety of a given user's "enrollment entries" and "voice model files" are cataloged during the backup process by the Accused Products.  ECF No. 87-5, p. 76-77, 82; ECF No. 87-6, p. 168; *id*., pp. 179-183; and *id*., pp. 188-209.

Mr. Van Even, Nuance's technical expert, further confirmed that the Accused Products perform this recursive function and capture a user's "enrollment entries" and "voice model files."

---

[15] Nuance briefly contends in its Motion that a user voice model and a user profile are not the same, despite its own testimony via corporate deposition equating the two terms.  Desmond Tr., 119:24-120:1 ("Yes [the Accused Product] reads the *models* and loads them as a *profile*.") (Emphases added); *see also* Cohen Tr., 29:19-30:12.

When discussing the Dragon.log file excerpt which SynKloud included in its infringement contentions as evidence of the Accused Products performing the "record" element, he stated: "***What you see here is just a writing down of every event of things it finds*** and makes sure it's -- so you have a statement for the user -- for the developer to understand what actually was copied over. Van Even Tr., 37:14-18 (Emphasis added).  In other words, *what you see here is evidence that the "record" (or catalog accurately) claim element occurred*.

Nuance's contention that the "record" element must "(1) copy the voice model files and the operating system registry parameters (system environment) (2) onto the transfer media such that the system environment is set up on the transfer media and can be installed in computer two upon transfer of the user profile" (Motion at p. 18) is further misplaced as it subsumes element (b), the "store" element[16], into the "record" element thereby rendering the "store" element superfluous.  ECF No. 87, p.18.

As discussed *supra*, the purpose of the "record" element is to discover and identify the "voice model files" and "enrollment entries" related to a user's voice model.  Poirier Tr., 82:10-83:21.  This then allows the invention to capture all the "enrollment entries" and "voice model files" when performing the storing element of said "enrollment entries" and "voice model files" in recoverable form in preparation for the "transfer" thereof to a destination computer. Conflating the elements of Claim 29, much like Nuance's attempts to read limitations into the claims that do not exist, runs afoul of long-established patent law.   *R&J Mfg. Co. v. First Card Co*., No. 15-200M, 2017 U.S. Dist. LEXIS 113727, at *12 (D.R.I. July 18, 2017) ("[w]here a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention.").

---

[16] ECF No. 1-1 at Claim 29, element (b): "store the user's voice model files and enrollment entries in recoverable form as the user's Voice Model."

**Element (c) transfer the user's Voice Model to a destination computer:**[17] Nuance again misses the mark and ignores SynKloud's detailed infringement contentions which, as discussed above, both point to the exact location of the "voice model files" and "enrollment entries," and demonstrate that they are *all transferred* during the export of a user profile by the Accused Products. **Ex. E**, pp. 9-16, 19-23.  "Enrollment entries" and "voice model files" are all within subfolders under the main user folder, titled "dp200" in SynKloud's infringement contentions. **Ex. E**, pp. 19-22.  SynKloud demonstrates that the dp200 folder which contains the user's "enrollment entries" and "voice model files," is transferred, meaning all its contents are transferred with it.  **Ex. E**, pp. 13-16.

Indeed, Nuance's expert and employee Mr. Van Even himself confirmed as much.  Van Even Tr., 76:18 – 81:21;  ECF No. 87-5, pp. 84-85; **Ex. E**, pp. 5, 7-8, 18-27.  Furthermore, it is not an assumption that user profile and voice model are equivalent terms – it is a reality reflected in the understanding of people in the field, such as Mr. Desmond and Dr. Cohen.  *See* Desmond Tr., 119:24-120:1 ("Yes [the Accused Product] reads the models and loads them as a profile."); *see also* Cohen Tr. 29:9-30:17.

**Element [d] wherein the transfer of the user's Voice Model to the destination computer enables the destination computer to enroll the user into the speech recognition computer program on the destination computer**[18]: Nuance confuses the issues with respect to element [d] by relying on its own misunderstanding of the claim language and fabricated Windows registry limitation.  The Accused Products create a record of the active "enrollment

---

[17] ECF No. 1-1 at Claim 29, element (c): "transfer the user's Voice Model to a destination computer, the destination computer including a destination installation of the speech recognition computer program."

[18] ECF No. 1-1, Claim 29 wherein clause: "wherein the transfer of the user's Voice Model to the destination computer enables the destination computer to enroll the user into the speech recognition computer program on the destination computer and increases the accuracy of the speech recognition computer program on the destination computer."

entries" and "voice model files" as reflected by the Dragon.log file and Backup folder.  *See e.g.,*
**Ex. J**; *see also* **Ex. E** pp. 19-23.

But the record itself never replaces the active user "enrollment entries" and "voice model
files," nor does SynKloud ever allege it does – it is merely evidence that the cataloging of a
given user's "voice model files" and "enrollment entries" occurred.  Poirier Tr. 82:10-83:21.  In
other words, it is not the purpose of the "record" element to replace the active user "voice model
files" and "enrollment entries."  Instead, what this element does is create an accurate catalog of
the "enrollment entries" and "voice model files" for a given user so a user may reference it and
confirm all files were transferred.  Mr. Van Even stated this is *precisely* what is done by the
Accused Products.  Van Even Tr., 37:14-18 ("***What you see here is just a writing down of every***
***event of things it finds*** and makes sure it's -- so you have a statement for the user -- for the
developer to understand what actually was copied over.") (Emphasis added).

SynKloud's infringement contentions demonstrate that it is the "enrollment entries" and
"voice model files" which were recorded that are ultimately transferred and used on the
destination computer for enrollment into the speech recognition software, thereby accomplishing
element [d].  **Ex. E.**, pp. 12-16, 18-23, 28-49.

> c. *SynKloud provided sufficient evidence demonstrating infringement of Claim 34 by the*
>    *Accused Products.*

**Element (a)** [19]**:**   Nuance contends that SynKloud has not shown the receipt of both
"enrollment entries" and "voice model files" on the destination computer; again, this is false.
SynKloud provided detailed infringement contentions for claim 34 which show the location of
"enrollment entries" and "voice model files" in the Accused Products and that they are all
transferred during the export/import function of the Accused Products.  *See* Claim 34

---

[19] ECF No. 1-1 at Claim 34, element (a): "receive voice model files and enrollment entries associated with a user
from a source computer, the voice model files and enrollment entries having been generated by a source installation
of the speech recognition computer program on the source computer into which the user is enrolled."

Infringement Contentions, attached to Romero Decl. as **Exhibit H** and incorporated by reference, at pp. 5-8, 11-14;  Van Even Tr., 81:14-17.  In addition, SynKloud confirmed that the "enrollment entries" and "voice model files" received by the destination computer originated from and were generated by a source computer.  **Ex. H**, pp. 5-7, 11-17.  Dr. Cohen provides additional detail in his report, demonstrating how the "enrollment entries" such as username, region, and speech options, are generated on the source computer.  *See* ECF No. 87-5, pp. 94-97.

Furthermore, addressed *supra*, the term "enrollment entries" does not require that the information be stored in the Windows registry as Nuance now argues.  Thus, element (a), the "receive" limitation, is met by the Accused Products.  *See* ECF No. 87-5, pp. 96-97.

**Element (b)**[20]: As described by Nuance's FRCP 30(b)(6) witness, the destination computer reads the entirety of the user's voice model prior to loading the user via the import function.  Desmond Tr., 119:24-120:1 ("Yes [the Accused Product] reads the models and loads them as a profile."); *see also* ECF No. 87-5, p. 98.  Thus, Nuance itself admits that it is the entirety of the user voice model, including both "voice model files" and "enrollment entries," which enroll the user on the destination computer.

**Element [c]**[21]: Nuance argues that a user has access to a software prior to importing a user profile. However, Nuance testified to the contrary.  Namely, Mr. Desmond testified that a user could not use the Accused Products without having a user profile.  Desmond Tr., 16:17-18 ("So a user needs to create a user profile, definitely, in order to use the product.").  Given the context of the Asserted Patent, it is clear that access to the speech recognition program in Claim 34 references access to its speech recognition functionality, as understood by Mr. Desmond.  It

---

[20] ECF No. 1-1 at Claim 34, element (b): "enroll the user on said destination computer, using the user's stored enrollment entries and the first user's user voice model files transferred from the source computer."
[21] ECF No. 1-1 at Claim 34, element [c], added for clarity: "wherein the enrollment of the user on the destination computer enables the user to have access to the speech recognition computer program on the destination computer and increases the accuracy of the speech recognition computer program on the destination computer."

is not until the import of the user profile is complete that a user has access to, *i.e.*, may use, the Accused Products.  **Ex. H**, pp. 7-9.

> d. *SynKloud provided sufficient evidence demonstrating infringement of Claim 51 by the Accused Products.*

**Elements (b)-(d)**: Nuance argues generally that elements (b)-(d)[22], the "examine," "package," and "copy" limitations, respectively, are not met because it contends that "the data" must include the Windows registry.  ECF No. 87, p. 22.  As discussed *supra*, this is an improper reading of a limitation into the claims.  In addition, SynKloud's infringement contentions demonstrate that initiating the export function on the source computer causes the Accused Products to examine the memory and identify the data to be transferred – in this case, the user profile.  ECF No. 87-5, pp. 106-108; *see also* Claim 51 Infringement Contentions attached to Romero Decl. as **Exhibit I** and incorporated by reference, at pp. 5-6.  Dr. Cohen confirmed the examination process using the Dragon.log file.  ECF No. 87-5, pp. 106-107.

The Accused Products then package said data into a folder as shown in SynKloud's infringement contentions. **Ex. I**, p. 7.  Again, Dr. Cohen provided additional detail demonstrating that the data is packed into the Dragon default folder structure.  ECF No. 87-5, pp. 107-108.

SynKloud's infringement contentions then show the packaged data being copied from the source computer to the transfer medium – in this case, a mapped network drive.  **Ex. I**, pp. 6-7.

**Element (e)** [23]**:** Nuance argues the Accused Products do not transfer the data from the transfer medium to the destination computer.  ECF No. 87, p. 22.  Nuance argues that a user selects "import user" on the destination computer and that the first computer plays no role in said process.  However, to select a voice model to import, the destination computer *must* have access

---

[22] ECF No. 1-1 at Claim 51, elements (b)-(d): "b) examine the memory to identify and select the data to transfer; c) package the selected data into a format for use by a destination computer; d) copy the packaged data to a transfer medium for transfer."

[23] ECF No. 1-1 at Claim 51, elements (e): "transfer the packed data from the transfer medium to the destination computer."

to the voice model, *i.e.*, the data must already be transferred to the destination computer. SynKloud's infringement contentions include a screen shot from the Accused Products showing a source computer transferring the packaged data to the destination computer through a mapped network drive.  (Screenshot below from **Ex. I**, p. 6)



This mapped network drive is located on, and accessible by, the destination computer.

SynKloud further includes the destination computer view of said network drive in its infringement contentions.   Importantly, the drive location is identified on "this PC," *i.e.*, the destination computer. (Screenshot below from **Ex. I**, p. 8)



*Folder view on the destination computer of voice model.*

SynKloud has provided sufficient evidence that the Accused Products meet every element of Claim 51.

## CONCLUSION

For the foregoing reasons, SynKloud respectfully requests that the Court deny Nuance's Motion.

Dated:  March 4, 2022

Respectfully Submitted by

SynKloud Technologies, LLC,

By and through her attorneys,

*/s/ Catherine I. Rajwani*
Catherine I. Rajwani, Esq. (BBO# 674443)
Herling Romero, Esq. (BBO# 703870)
THE HARBOR LAW GROUP
300 West Main Street, Building A, Unit 1
Northborough, MA 01532
Phone: (508) 393-9244
Fax: (508) 393-9245
Email:  crajwani@harborlaw.com
Email:  hromero@harborlaw.com

**CERTIFICATE OF SERVICE**

I, Catherine Rajwani, hereby certify that, on March 4, 2022, the foregoing document was served electronically on all counsel of record.

*/s/ Catherine  Rajwani*

21