UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| SYNKLOUD TECHNOLOGIES, LLC, <br><br> Plaintiff, <br> v. <br><br> NUANCE COMMUNICATIONS, INC., <br><br> Defendant. | Civil Action No. 1:20-cv-10564 <br> JURY TRIAL DEMANDED |

## SYNKLOUD TECHNOLOGIES, LLC'S MOTION FOR RECONSIDERATION

Plaintiff SynKloud Technologies, LLC ("SynKloud") respectfully asks this Court to reconsider (1) two sentences in its Claim Construction Memorandum (ECF No. 46 at p. 20) suggesting that a user's "enrollment entries"[1] are not a part of a user's "voice model"[2] and (2) its Order allowing in part Nuance's Motion for Summary Judgment (ECF No. 126).

### STANDARD FOR REVIEW

Federal Rule of Civil Procedure 54(b) gives a court discretion to revise "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

Because the Court has not entered a final judgment in this matter, SynKloud contends that it need not demonstrate the existence of extraordinary circumstances in its motion for reconsideration. *See Pure Distribs. v. Baker,* 285 F.3d 150, 156 (1st Cir. 2002) ("The remaining claims in that action

---

[1] Defined by the Court as "entries that a user makes during the registration process." ECF No. 46 at p. 21.

[2] Defined by the Court as "a signal, information, or electronic data file that is information and/or parameters representing a person's voice or a noise." *Id.* at 22.

are awaiting trial, and the district judge, in dismissing Pure's claims, did not enter judgment in favor of Eicotech in accordance with Rule 54(b). As such, the dismissal of Pure's claims remains subject to revision at any time before the entry of judgment adjudicating all the claims and the rights of all the parties." (quoting FED. R. CIV. P. 54(b)); *see also Cabral v. Brennan*, 853 F.3d 763, 766 n.3 (5th Cir. 2017) ("Rule 59(e) serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence, and it is an extraordinary remedy that should be used sparingly. In contrast, under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." (internal quotation marks and citations omitted)); *E&I Global Energy Servs. v. United States*, 144 Fed. Cl. 508, 530-33, 2019 U.S. Claims LEXIS 1087 at *10 -*20 (Aug. 29, 2019) ("As long as a decision is interlocutory, the Court possesses wide discretion to depart from or stand by it, whatever justice requires."); *Cobell v. Jewell*, 802 F.3d 12, 25-26, 419 U.S. App. D.C. 370 (D.C. Cir. 2015) (explaining that Rule 59(e), which governs reconsideration of final judgments, sets a higher threshold for relief than Rule 54(b), which governs reconsideration of interlocutory orders); *Simone v. Monaco*, 2020 U.S. Dist. LEXIS 37360 (D. Mass., March 4, 2020) (finding the plaintiff need not demonstrate the existence of extraordinary circumstances in motion for reconsideration because the Court had not entered final judgment on the dismissed claims).[3]

---

[3] *But see Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983))); *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000) ("[A] court should grant a motion for reconsideration of an interlocutory order only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order.").

Should the Court determine that SynKloud's motion for reconsideration should be considered under Federal Rule of Civil Procedure 59(e), SynKloud moves in the alternative under this Rule.

## ARGUMENT

### A. SynKloud Respectfully Requests that the Court Strike Two Sentences from its Claim Construction Memorandum Suggesting that "Enrollment Entries" Cannot Be a Part of a User's "Voice Model."

The Court's Claim Construction Order in this matter construed seven terms of U.S. Patent No. RE 44,248 (the "'248 Patent") and found one to be indefinite. *See* ECF No. 46 at pp. 21-22.[4] The Memorandum that precedes the Order (*id*. at pp. 1-21) provides background on the '248 Patent (*id*. at pp. 2-4), sets forth specific claim language (*id*. at pp. 4-5), the legal standard used by the Court for construing the claim terms (*id*. at pp. 5-7), each parties' proposed definitions for the disputed claim terms, the Court's analysis of the '248 Patent and relevant technology, as well as constructions for the disputed claim terms, ultimately reflected in the Court's Order on pp. 21-22.

Portions of the Court's Memorandum group together separate terms. For example, the section of the Memorandum pertaining to the claim terms "Voice Model, user's Voice Model, or voice model files" appears to conflate two different claim terms: "user's Voice model" and "voice model files." ECF No. 46 at pp. 17-20. Further, on page 18, the Memorandum lists SynKloud's proposed constructions for these terms as the terms themselves: "Voice Model, voice model, or voice model files." This does not accurately reflect SynKloud's proposed <u>separate</u> definitions for these two distinct

---

[4] The Court noted in its Partial Summary Judgment Order that "[n]either party asked this Court to reconsider the claim construction rulings." ECF No. 126 at p. 7. SynKloud did not request reconsideration of this Court's Claim Construction <u>Order</u> because the constructions contained therein comport with the plain and ordinary meaning of the claim terms as understood by one of skill in the art, supported by the specification of the '248 Patent. The two sentences at issue in this Motion are included in the Court's Memorandum and are contrary to (i) the language of claim 29 of the '248 Patent; (ii) the description of the VMM invention contained in the '248 Patent and (iii) the understanding of those skilled in the art, such as the parties' experts Dr. Jordan Cohen and Stijn Van Even.

terms:  (1) a user's voice model (or Voice Model) as a  "user's voice model files and enrollment entries" (ECF No. 29 at p. 19) and (2) voice model files as "files in a user's voice model" (*id*. at p. 11).

Later in the same section, after construing the claim terms "voice model" and "voice model files," the Court includes the following imprecise language (that SynKloud understood to be gratuitous[5]):  "Without support in the patent, SynKloud seeks to define the term "voice model" or user's voice model files to include enrollment entries. To reiterate, SynKloud again improperly seeks to conflate enrollment entries with the voice model."  ECF No. 46 at p. 20.

Given the context of the claims of the '248 Patent and the cannons of patent claim construction, these two sentences are problematic.  First, SynKloud's proposed definition of a "user's voice model" as "a user's voice model files and enrollment entries" has support in the '248 Patent. Specifically, in claim 29(b):  "store the user's voice model files and enrollment entries in recoverable form as the user's Voice Model."  ECF No. 1-1 at 21:66-67.  As the Court noted in the legal standard section of its Claim Construction Memorandum:  "Courts begin the analysis by looking to 'the language of the claims themselves.'"  *Phillips v. AWH Corp*., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*)); "In many instances, 'the use of a term within the claim provides a firm basis for construing the term.' *Phillips*, 415 F.3d at 1314."  ECF No. 46 at p. 5-6.

Claim 29 of the '248 Patent provided significant support for SynKloud's position that a "Voice Model" included enrollment entries.  Indeed, the inclusion of enrollment entries in a user's "Voice Model" is the *precise metes and bounds of the invention* patented.  *See also Renishaw PLC v.*

---

[5] SynKloud understood this language to be nonbinding on the ultimate constructions of the claim terms as it is not reflected in the Court's Order on pages 21-22.  SynKloud viewed these two sentences as commentary pertaining to SynKloud's proposed construction (not adopted by the Court) and relevant (in part) to the Court's prior analysis concerning "enrollment entries" as part of the means-plus-function terms of claims 8 and 15.  ECF No. 46 at pp. 13-17.

*Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("The claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim.").[6]

It bears noting that *the key aspect* of the invention claimed in the '248 Patent is *movement of a user's enrollment entries as part of the user's voice model.* ("It is the object of this invention to provide a method for transferring voice models defined as Voice Model Mobility. … It was determined that a better way to use multiple machines was to separate the files and parameters that characterize the user, *package the files and parameters as a voice model* and move them to a medium for transfer and installation into a separate system." '248 Patent, 5:50-60 (emphases added)). The "parameters[7] that characterize the user" are the enrollment entries, user specific data entered during registration of the user with the speech recognition program. *See* ECF No. 87-5 at p. 11[8].

"The ability to unplug these parameters and data from one machine and transfer the files to another machine using mediums like disk, optical disk, floppy, network, etc. is defined here as Voice Model Mobility." *Id.* at 6:36-39. "When the user selects the OK button, a software

---

[6] To be clear, SynKloud is not asking the Court to redefine *any* of the claim terms in its Claim Construction Order, including "Voice Model."

[7] A parameter "generally, is any characteristic that can help in defining or classifying a particular system…." https://en.wikipedia.org/wiki/Parameter "That is, a parameter is an element of a system that is useful, or critical, when identifying the system, or when evaluating its performance, status, condition, *etc*." *Id.*

[8] "I understand the '248 Patent claims the software instructions to effectuate the transfer of a user's voice model. I understand that the software instructions cause the following steps to occur: a) On the first computer an investigation or a discovery of what is included in a user voice model, making a record (i.e., a catalog) of the voice model parameters and files, and **copying the parameters (i.e., enrollment entries)** and voice model files to a media. RE44248 at 6:51-7:26;…." (emphases added).

execution process begins *copying the user's parameters, and other files that make up the voice model*." *Id*. at 6:52-55 (emphases added). The ultimate transfer of the user's parameters (enrollment entries) as part of a user's voice model is what causes the enrollment of the user into the speech recognition software on a destination computer.

In the first sentence SynKloud requests be stricken from the Court's Memorandum ("[w]ithout support in the patent, SynKloud seeks to define the term 'voice model' or user's voice model files to include enrollment entries"), the Court appears to equate the claim terms "voice model" and "user's voice model files."  ECF No. 46 at p. 20.  These are two separate terms used in the '248 Patent claims.  A user's "voice model files" are saved together with a user's enrollment entries as a user's "Voice Model." *See* '248 Patent at 21:66-68.  This is analogous to a book consisting of chapters and pictures.  While the book itself is comprised of its chapters, the two terms are not the same.  Each chapter is a subset of the book, which in their entirety, make up the book.  Just as in the claims of the '248 Patent, each user voice model file is a subset of a user's Voice Model.  The two terms are not equivalent.  The user's enrollment entries are akin to pictures in the book.  The book as a whole consists of its chapters and pictures.

In the Order entering a partial summary judgment against SynKloud, this Court relies heavily on these two sentences from its Memorandum in finding that Nuance did not infringe claims 29 and 34 of the '248 Patent and finding claim 29 invalid as indefinite.  SynKloud respectfully requests that the Court strike these sentences as they are at odds with the claim constructions contained in the Court's Order, and they are contrary to the express language of Claim 29 and the key concept underlying the Voice Model Mobility invention described in the '248 Patent.  SynKloud did not bring this issue to the Court's attention earlier because both parties moved forward in the litigation using the claim constructions contained in the Court's Order.

**B. A User's Enrollment Entries Inputted When Registering the User with the DNS Accused Products are Information/Parameters Representing a Person's Voice and Part of the User Profile (*i.e.* Voice Model).**

The Court construed the claim term "enrollment entries" as "entries that a user makes during the registration process." *See* footnote 1 *supra*. SynKloud's infringement contentions (also included as part of its expert's report) point out specific examples of the "entries that a user makes" during the user's registration process on the Dragon Naturally Speaking (DNS) Accused products, such as inputting a user's name, region, accent, and vocabulary (excerpt below from ECF No. 99-6 at p. 18):

**1.0 Enrollment entries**

During the Dragon Naturally Speaking registration process the software asks the user to input specific user related information selections including:

1. Name
2. Region
3. Accent
4. Vocabulary

In his report, SynKloud's expert Dr. Jordan Cohen explains in greater detail how these enrollment entries are information and/or parameters representing a person's voice. ECF No. 87-5 at pp. 43.[9] During registration with speech recognition software, a user provides a name, a parameter defining his/her/their voice:

---

[9] *See also* ECF No. 87-5 at pp. 11, 15-21, 25, 29-30, 43-44, & 83; *see also* ECF No. 87-8 at pp. 2-8.

## 8.2 Speech Recognition Software

Initial steps when using speech recognition software:

    iii.  **Enrollment**

Enrollment for desktop speech recognition software is still required and allows the speech recognition software to associate a user with a specific voice model (i.e., user profile).

    1.  User identification

User identification for speech recognition software is typically a username that the user provides to the speech recognition software, an example of which is included below:



*Id.* A user then inputs additional information during registration that represents characteristics of a user's voice such as language (vocabulary), region, and accent (*see id.* at 43-44).

8

2. **User characteristics**

Speaking patterns vary greatly from person to person. Given these differences in speech, speech recognition software has varying base models which approximate a given user's speech patterns. This is done by requesting information from the user about his or her speaking patterns, language, or other similar information. Typical user characteristics requested by speech recognition software include:

a. Language – to allow selection of a proper voice vocabulary language for a specific user.

b. Region and accent – requested item to allow for selection of a proper dialect for a specific user.

During his deposition, Nuance's technical expert Stijn Van Even explained in greater detail how these enrollment entries represent a user's voice when questioned about SynKloud's infringement contentions (depicted directly below from ECF No. 99-11 at pp. 5-6):

**Claim 29 – Exhibit A - Enrollment Entries, Voice Model Files, and Respective Locations**

<u>Enrollment Entries Storage:</u>

The username enrollment entry is stored as a folder name, the default location is within the Dragon Naturally Speaking folder structure within the "Users" folder.  In this example, the enrollment entry dp200 caused a folder to be created called "dp200" (shown below) and is where all dp200 user enrollment entries and voice model files will be stored.

Enrollment Entries are stored in multiple folders and multiple files.  For example the enrollment entries are stored in files within the "current" and the "backup" folder for each user's DNS folder structures as shown below:



Below shows examples files with enrollment entries from the "current" folder, and the same files can be found in the backup folder.

<u>File: topics.ini – Language enrollment entry and related selected vocabulary.</u>

Note: Enrollment entries may be stored in more than one configuration file, as shown below with language.



Q. Okay. And this information's also indicating the language and the region; is that correct?

A. It does. It does, yes. U.S.A.

Q. Okay. And then on page 5, there's a screenshot of the contents of the options.ini file; is that correct?

A. Correct.

Q. And what's the information highlighted with the red box here?

A. It is highlighting the type of accent, English accent, you've picked from the Getting Started Wizard, so standard, standard English.

Q. Okay. And then on the bottom screenshot, that's the contents of the topics.ini file; is that correct?

A. That is right.

Q. And what's the information contained within the highlighted red boxes?

A. So that is referring to -- that is – the first box refers to the vocabulary which contains both the statistical information for that particular dialect of English. It also indicates the size and the type of vocabulary, the domain, what we call general, but you could also have legal, law enforcement, finance. You could have all the other domains. And then the second box is basically telling us the locale of the computer so that has actually an effect on how you determine how to spell the words, for instance, U.S. English spelling or is it U.K. spelling. That's what that variable controls.

ECF No. 99-5 at pp. 8-9.  Mr. Van Even explains that DNS's Getting Started Wizard (*i.e.* the registration of the user with the speech recognition software) elicits certain detailed information from the user that represents a person's voice, such as the user's region (USA), accent (standard English) and language/vocabulary ("particular dialect of English" and "size and the type of vocabulary"). *Id.*

As noted by the Court in footnote 4 of its summary judgment order (ECF No. 126 at p. 11), the related art section of the '248 Patent describes a "Voice Model" as "contain[ing] attributes that characterize specific speaking items such as formant, speaking rate, pause length, acoustic models, unique vocabulary's, etc. for a given user." '248 Patent at 2:50-52.  As explained above by both experts (Dr. Cohen and Mr. Van Even), the region in which a user resides, his/her/their accent and vocabulary all characterize specific speaking items of the user.

The very language of claim 29 requires that the "enrollment entries" are part of a user's "Voice Model," which makes sense.  The Court construed "Voice Model" as "a signal, information, or electronic data file that is information and/or parameters representing a person's voice or a noise." ECF No. 46 at p. 22.  A user's accent is information or a parameter that represents a person's voice. The region in which a user lives is information or a parameter that represents a person's voice (i.e. dialect).  A user's particular type of vocabulary is also information or a parameter that represents a person's voice.

Both parties understood that the "enrollment entries" in Nuance's DNS products (name, region, accent, language/vocabulary) were part of a user's Voice Model, as the terms were construed by the Court in its Order.  Indeed, Nuance's own technical expert, Stijn Van Even, Vice President of Development of Speech Recognition Solutions at Nuance who has worked on Dragon products for

over 30 years, explained in his expert report[10] that <u>there can be no disagreement</u> that the DNS user information (*i.e.* enrollment entries such as region, accent, and vocabulary) are part of a user's Voice Model (as the term has been construed by the Court):

> But there can be no serious argument that user information such as region, accent and vocabulary are also 'a signal, information or electronic data file that is information or parameters that representation [sic] a person's voice.'

Van Even Rebuttal Report, attached hereto as Exhibit A, p. 9 at ¶31.  Mr. Van Even then tries to reconcile his technical knowledge (*i.e.* user information region, accent and vocabulary *are also* information/parameters that represent a person's voice) with the two sentences of the Court's Memorandum indicating that the two must distinct.  *See id.*  Unable to do so, he is left confused about the meaning of the terms.  *See id.* ("As such, I am unable to discern the boundaries or meaning of the enrollment entry and voice model files terms under the '248 Patent.").

The Court's construction of the claim terms "enrollment entries," "voice model" and "voice model files" in its Order is consistent with the plain and ordinary meaning of the terms, as understood by a person of ordinary skill in the art, and supported by the '248 Patent claims and specification.  The two sentences in the Memorandum indicating that "enrollment entries" are distinct from a "voice model" are contrary to the '248 Patent claims, specification, and understanding of both parties' technical experts.

SynKloud therefore respectfully requests that this Court strike the two sentences in its Memorandum that are clearly erroneous (in the relevant technology) to persons skilled in the art.  The sentences are contrary to (i) the language of claim 29, (ii) a key aspect of the VMM invention

---

[10] The Court issued its Claim Construction Memorandum and Order on May 28, 2021.  Mr. Van Even served his rebuttal expert report approximately six months later on November 15, 2021.

explained in the '248 Patent, and (iii) the understanding of both parties' experts.  The sentences also imply that a user's "voice model" and "voice model files" are the same.

### C. The Invention Claimed in the '248 Patent Is Not Enabled If a User's Enrollment Entries Are Separate from a User's Voice Model.

If the Court removes a user's "enrollment entries" from a user's "voice model," the VMM invention won't work.  Without the transfer of the user's information entered upon registration (*i.e.* parameters representing a person's voice), a user cannot enroll in the speech recognition software on a destination computer.  The Court's Memorandum rewrites the VMM invention and claims of the '248 Patent in such a way to remove the enablement of the patented invention.

Nuance seized upon this discrepancy in the Court's Memorandum and attempted to create a noninfringement defense.  Nuance argued that SynKloud could not prove infringement because SynKloud demonstrated (in accordance with the '248 Patent claims and VMM technology) the transfer of "enrollment entries" as part of the user's "voice model" or user profile.  On this basis, the Court found the claims not to be infringed (and claim 29 indefinite).  The Court held that the "enrollment entries" could not be part of the user's "voice model" or user profile.

If the Court strikes the two sentences at issue in this Motion, claim 29 would not be indefinite, and Nuance's motion for summary judgment of noninfringement should be denied.  SynKloud demonstrated the infringement of its asserted patent claims by showing how instructions in the Accused Products practiced each claim element, including the transfer of "enrollment entries" and "voice model files."  SynKloud finds itself in the awkward position of having demonstrated its infringement case only to find that the Court (hopefully inadvertently) changed its VMM invention and '248 Patent claims.  SynKloud therefore requests that the Court reconsider the Partial Summary Judgment Order (ECF No. 126) against it.  Under the language of the '248 Patent claims (and the metes and bounds of the invention) and using the Court's constructions of the disputed claim terms,

SynKloud has demonstrated that the Accused Products infringe claims 29 and 34 and that claim 29 is definite.

## CONCLUSION

For the reasons stated herein, SynKloud respectfully requests that the Court (1) strike two sentences included in its Claim Construction Memorandum suggesting that a user's "enrollment entries" are not a part of a user's "voice model" (ECF No. 46 at p. 20) and (2) deny Nuance's Motion for Summary Judgment (ECF No. 126).

Dated:  September 13, 2022

Respectfully Submitted by SynKloud Technologies, LLC,

By and through its attorneys,

*/s/ Catherine I. Rajwani*

Catherine I. Rajwani, Esq. (BBO# 674443)
THE HARBOR LAW GROUP
96 West Main Street, Suite C
Northborough, MA 01532
Phone:  (508) 393-9244
Fax:  (508) 393-9245
Email:  crajwani@harborlaw.com

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, counsel for Plaintiff and counsel for Defendant conferred on September 12, 2022 and attempted in good faith to resolve or narrow the issues addressed in this motion. Defendant indicated that it opposes Plaintiff's Motion for Reconsideration.

*/s/ Catherine I. Rajwani*

## CERTIFICATE OF SERVICE

I, Catherine I. Rajwani, hereby certify that, on September 13, 2022 the foregoing document was served electronically on all counsel of record.

/s/ Catherine I. Rajwani